Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| DOMINGO BRACERO QUIÑONES<br><br>*Apelante*<br><br>v.<br><br>DON BOLLOEPAN BAKERY CORP. Y OTROS<br><br>*Apelados* | KLAN202400672 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: LJ2020CV00059 (307)<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparece ante nos el señor Domingo Bracero Quiñones (señor Bracero Quiñones o apelante), mediante recurso de *Apelación* y nos solicita la revisión de la *Sentencia*[1] emitida el 11 de junio de 2024 y notificada el 13 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario). Mediante el referido dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación*[2] presentada por Don Bolloepan Bakery Corp. (parte apelada).

Por los fundamentos que discutiremos, ***confirmamos*** la *Sentencia* apelada.

**I.**

Según surge del expediente ante nos, el señor Bracero Quiñones presentó *Petición de Interdicto Preliminar y Permanente*[3]

---

[1] Entrada #175 de Sistema Unificado de Manejo y Administración de Casos SUMAC.
[2] Entrada #169 de SUMAC.
[3] Entrada #1 de SUMAC.

Número Identificador
SEN2024_____

contra la parte apelada, esto, por incumplir con las disposiciones del Título III de la Ley Federal conocida como American with Disabilities Act[4] (en adelante "Ley ADA"). En esencia, alegó que la acción presentada "*busca remediar la discriminación ilegal en un lugar de acomodo público*"[5]. Adujo, que "sufre de una discapacidad física o mental que limita sustancialmente varias de sus actividades cotidianas principales", tales como: "cuidarse a sí mismo, realizar tareas manuales, ver, oír, comer, dormir, caminar, estar de pie, levantar objetos, inclinarse, hablar, respirar, aprender, leer, concentrarse, pensar, comunicarse, trabajar", entre otras. Además, señaló que el Departamento de Transportación y Obras Públicas le expidió un rótulo removible de personas con impedimento físico.

Esbozó que, el 21 de enero de 2020, visitó el local de la parte apelada y encontró múltiples barreras que le interfirieron con la capacidad de usar y disfrutar los bienes, servicios y acomodos ofrecidos en la propiedad de la parte apelada, como, por ejemplo: que no había una rampa para poder entrar al establecimiento comercial. En particular, enumeró las barreras que incumplen con las disposiciones federales y especificaciones técnicas, incluyendo dimensiones que están en la propiedad de la parte apelada, a saber: no hay una ruta de acceso desde los estacionamientos o la acera hasta una entrada accesible sin escaleras; no hay el número requerido de estacionamientos accesibles, ni cumple con la configuración, las especificaciones técnicas y dimensiones de la categoría "van"; no están identificados con el símbolo internacional de accesibilidad; ningún estacionamiento tiene la rotulación de "van" requerida; la ruta de acceso hacia la entrada accesible desde los estacionamientos no es firme, estable y tiende a ser resbalosa, y no tiene 36" pulgadas de ancho; hay rampas cuya pendiente es muy

---

[4] 42 USC § 12181 *et seq.*
[5] Véase *Petición de Interdicto Preliminar y Permanente*, entrada #1 de SUMAC.

inclinada; hay partes cuya inclinación es mayor a 1:20; y la entrada no cumple con los requisitos de la reglamentación aplicable.

Manifestó que <u>no ha podido entrar al estacionamiento debido a las barreras mencionadas, pero de lo que ha observado, mirando desde afuera,</u> cree que dentro de la propiedad también hay incumplimientos sustancialmente inconsistentes con la reglamentación aplicable, tales como: los pasillos, góndolas, filas o caminos no tienen un espacio de al menos 36" que permita la movilidad adecuada; así como, la configuración, las dimensiones y espacios de la fila de pago y del mostrador de ventas y servicios; hay materiales, objetos o bienes que están disponibles para todas las personas, pero estos están fuera de alcance, ya que están ubicados a más de 48" del suelo.

En cuanto a los baños, arguyó que no son accesibles y carecen de la rotulación reglamentaria; no hay una ruta accesible; se provee un baño para una persona a la vez y la puerta abre hacia adentro del cuarto, pero el área adyacente al inodoro no tiene el espacio de 30" x 48" adyacente a la puerta. Mencionó que, igualmente, incumple sustancialmente con la reglamentación aplicable, el espacio alrededor del lavamanos, la altura y debajo de este; el grifo no tiene una configuración que permita su operación sin tener que apretar fuerte, torcer o girar la muñera; el posicionamiento y altura del dispensador de jabón y, el posicionamiento y altura del equipo para secado de manos.

Con relación al inodoro, detalló que el centro está alejado de la pared lateral; el espacio provisto alrededor del inodoro, la altura del inodoro, la configuración del control para la descarga del inodoro, el posicionamiento del dispensador de papel del inodoro, así como el papel de inodoro y la configuración existente en cuanto al pasamanos alrededor, al lado, y detrás de este, también es sustancialmente inconsistente con la reglamentación aplicable.

Debido a ello, solicitó los siguientes remedios legales: que se dicte una Sentencia Declaratoria contra la parte apelada por haber incumplido con los requisitos del Título III de la Ley para Personas con Discapacidades (la Ley ADA) y la reglamentación de implementación relevante de dicha ley; que se determine que la propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la parte apelante; que se dicte un interdicto preliminar y permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a); que se ordene a la parte apelada tomar todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la Ley ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada; y que, además, se disponga que el tribunal retendrá jurisdicción por un período para supervisar que la parte apelada cumpla con los requisitos relevantes de la Ley ADA.

En caso de que la parte apelada continúe su condición discriminatoria, solicita, de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504, que se ordene el cierre y clausura de la propiedad como medida para detener la condición discriminatoria hasta tanto la parte apelada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen; y, solicitó el pago de los costos de la acción y gastos de litigio, de conformidad con 42 USC § 12205; así como el pago de honorarios razonables de abogados no bajo las Reglas de Procedimiento Civil de Puerto Rico, sino de conformidad con lo dispuesto en 42 USC § 12205 y 28 CFR § 36.505.

El 1 de octubre de 2020, la parte apelada contestó la Demanda y negó las alegaciones presentadas en su contra e indicó que no existen tales barreras arquitectónicas en violación a la Ley ADA.

Tras varios trámites procesales, el 17 de marzo de 2021, se presentó "*Petición Enmendada de Interdicto Permanente*[6]" para incluir como codemandado a Costa del Fuego Enterprise Corp. (Costa del Fuego). No obstante, el 11 de mayo de 2023, el señor Bracero Quiñones presentó *"Moción de Desistimiento Voluntario*[7]" contra Costa del Fuego y, el 12 de mayo de 2023, el TPI dictó *Sentencia Parcial*[8].

Seguidamente, el 15 de mayo de 2023, se celebró una vista de "*Status Conference*[9]", en la que se les ordenó a las partes informar los hallazgos a ser corregidos en la propiedad y los acuerdos y/o estipulaciones establecidas. El 25 de mayo de 2023, el señor Bracero Quiñones presentó "*Moción en Cumplimiento de Orden*[10]" e identificó las barreras que persistían. La parte apelada compareció el 6 de junio de 2023 mediante *"Moción en Cumplimiento de Orden*[11]" en la que expresó que cumplieron con la remoción de las barreras, y que, además, remitió a la parte apelante fotos, copia del informe de la Defensoría de las Personas con Impedimentos y certificación de cumplimiento.

El 26 de junio de 2023, el señor Bracero Quiñones presentó "*Moción en Solicitud de Sentencia Sumaria*[12]". En esta, le solicitó al TPI que dictara sentencia a su favor y ordenara a la parte apelada a modificar su propiedad para cumplir con los Estándares de Diseño Accesible. El 10 de noviembre de 2023, compareció la parte apelada mediante *Moción en Oposición a Sentencia Sumaria presentada por*

---

[6] Entrada #58 de SUMAC.
[7] Entrada #132 de SUMAC.
[8] Entrada #133 de SUMAC.
[9] Entrada #135 de SUMAC.
[10] Entrada #136 de SUMAC.
[11] Entrada #139 de SUMAC.
[12] Entrada #143 de SUMAC.

*la parte demandante*[13] y expresó su oposición a que se dictara sentencia en su contra; también, solicitó que se realizara la celebración de una inspección ocular para cerciorarse de haber cumplido con todo lo requerido. A tales fines, el 16 de enero de 2024, el foro primario emitió *Orden*[14] para notificar la fecha en que se llevaría a cabo la Vista Ocular.

El 14 de marzo de 2024, se celebró la Vista Ocular y, ese mismo día, el juez a cargo del procedimiento levantó un *Acta de Inspección Ocular*[15]. Surge del Acta, que el TPI delineó las controversias y expresó "*que el propósito de la inspección es atender las inquietudes sobre lo reclamado de las exigencias bajo la Ley para Personas con Discapacidades (siglas en inglés ADA). Específicamente se atenderá el asunto del estacionamiento, la baranda, las puertas, y el baño, porque esos son los únicos reclamos que hay sobre las fotografías presentadas mediante moción*" por la parte apelada[16]. Conforme al Acta, las partes observaron el exterior e interior de la propiedad; y el Juez de instancia resolvió lo siguiente*: "En resumen, este Juez entiende que lo único razonable es la cubierta para tapar tubería del lavamanos, cambiar las barandas del baño, se estará verificando lo alegado sobre el estacionamiento, y si se requieren esas 18 pulgadas que se alega de espacio desde la pared. Sobre el estacionamiento verificará si procede porque como determinación de hecho entiende que la distancia es razonable porque se estaciona, pueden abrir la puerta y bajar cómodo".*

El 15 de mayo de 2024, la parte apelada presentó *Moción en Cumplimiento de Orden y Solicitud de Desestimación*[17]. Arguyó que los trabajos habían sido terminados y eran conforme con la reglamentación establecida.

---

[13] Entrada #158 de SUMAC.
[14] Entrada #165 de SUMAC.
[15] Entrada #166 de SUMAC.
[16] *Íd.*
[17] Entrada #169 de SUMAC.

El señor Bracero Quiñones se opuso al petitorio de la parte apelada y alegó que "[e]l demandado no ha puesto a este Tribunal en posición de concluir que se han eliminado todas las barreras arquitectónicas en controversia. Por el contrario, la moción refleja incertidumbre y duda sobre el alcance y adecuacidad de las modificaciones realizadas. Por tanto, no se cumple con el estándar aplicable para desestimar por academicidad, [...]"[18].

Así las cosas, el 11 de junio de 2024, el TPI emitió la Sentencia apelada. En síntesis, el foro primario realizó 17 determinaciones de hechos y determinó que, luego de efectuarse la vista ocular, no se detectaron las barreras arquitectónicas argüidas por el señor Bracero Quiñones. Razonó que, *los hechos y el derecho aplicable al caso de autos han variado de tal forma que no existe una controversia vigente entre partes adversas. Tampoco es de aplicación alguna excepción establecida por la jurisprudencia aplicable. Este Tribunal no tiene duda alguna que las reclamaciones incoadas por el Sr. Bracero Quiñones se tornaron académicas por ser eliminadas por el demandado*[19].

Inconforme, el 15 de julio de 2024, el señor Bracero Quiñones acudió ante nos mediante el recurso de epígrafe, en el que esbozó el siguiente señalamiento de error:

> El TPI incurrió en un error de derecho al establecer en la *Sentencia* que un estacionamiento con 65 pulgadas de ancho es un estacionamiento que cumple con la sección 502 de la ADAAG, la reglamentación federal que implementa la Ley ADA.

Examinado el recurso, el 17 de julio de 2024, emitimos una *Resolución* concediéndole a la parte apelada un término para someter su alegato en oposición. No obstante, la parte apelada no compareció, por lo que resolvemos sin el beneficio de su comparecencia.

---

[18] Entrada #170 de SUMAC.
[19] Entrada #175 de SUMAC.

**II.**

**-A-**

La Regla 10.2 de Procedimiento Civil[20], permite a la parte demandada solicitar al tribunal que desestime la demanda antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará"[21]. Esa solicitud deberá hacerse mediante una moción y basarse en uno de los fundamentos siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia en su diligenciamiento, (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. La notificación de esta moción interrumpe el término para presentar la alegación responsiva[22].

Para disponer adecuadamente de una moción de desestimación conforme a la precitada regla, el tribunal tiene la obligación de dar por ciertas y buenas todas las alegaciones fácticas de la demanda que hayan sido aseveradas de manera clara[23]. A su vez, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante[24]. Habrá de considerarse, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida"[25]. También es importante tener presente que el propósito de las alegaciones es bosquejar "a grandes rasgos cuáles

---

[20] 32 LPRA Ap. V, R. 10.2.
[21] *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022); *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1065 (2020), citando a *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001).
[22] *Íd.*
[23] *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013).
[24] *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022), *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015).
[25] *Colón v. Lotería*, 167 DPR 625, 649 (2006), *Cruz Pérez v. Roldán Rodríguez*, 206 DPR 261, 267 (2021).

son las reclamaciones [contra la parte demandada para que] ésta pueda comparecer [a defenderse] si así lo desea"[26].

**-B-**

El principio de justiciabilidad requiere que los tribunales limiten su intervención para resolver controversias reales y definidas que afecten las relaciones jurídicas de partes antagónicas u opuestas[27]. Conforme a este principio, los tribunales sólo deben evaluar controversias que sean justiciables, es decir, no deben atender controversias hipotéticas, abstractas o ficticias[28].

A tenor con lo anterior la doctrina de academicidad es una de las manifestaciones del principio de justiciabilidad que enmarca los límites de la función judicial[29]. Un caso o controversia es académica cuando pierde su carácter adversativo, ya sea por cambios en los hechos que originaron la controversia o cambios legales ocurridos durante el trámite judicial. Para que el asunto sea académico, estos cambios deben crear una situación en la que la emisión de la sentencia resultaría en una opinión consultiva[30]. Es decir, el pleito es académico cuando la sentencia que sobre el mismo se dictare, por alguna razón, no podría tener efectos prácticos[31].

Para determinar si un caso es académico, se debe evaluar los eventos anteriores, próximos y futuros, a los fines de establecer si su condición de controversia viva y presente subsiste con el transcurso del tiempo[32]. Una vez se determina que un caso es académico los tribunales tienen el deber de abstenerse y no puede entrar a considerar sus méritos[33].

---

[26] *Torres, Torres v. Torres et al*, 179 DPR 481, 501 (2010).
[27] *Pueblo v. Díaz Alicea*, 204 DPR 472, 481 (2020); *UPR v. Laborde Torres y otros I*, 180 DPR 253, 280 (2010).
[28] *Moreno v. Pres. UPR II,* 178 DPR 969, 973 (2010).
[29] *C.E.E. v. Depto. de Estado*, 134 DPR 927, 934 (1993).
[30] *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011); *Angueira v. J.L.B.P.*, 150 DPR 10, 19 (2000).
[31] *E.L.A. v. Aguayo*, 80 DPR 552 (1958); *Cruz v. Administración,* 164 DPR 341 (2005).
[32] *San Antonio Maritime v. P.R. Cement Co.*, 153 DPR 374 (2001).
[33] *El Vocero v. Junta de Planificación,* 121 DPR 115, 124-125 (1988).

En *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* nuestro Tribunal Supremo expuso los criterios que debemos evaluar para decidir si una controversia es justiciable o no. A saber:

> [S]i es (1) tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) que el interés sea real y substancial y que permita un remedio específico mediante una sentencia de carácter concluyente, y finalmente (3) si la controversia es propia para una determinación judicial, ya que se distingue de una disputa de carácter hipotético o abstracto, y de un caso académico o ficticio[34]. Por lo tanto, no será justiciable aquella controversia en la que: (1) se trata de resolver una cuestión política; (2) una de las partes no tiene legitimación activa; (3) después que ha comenzado el pleito, hechos posteriores la convierten en académica; (4) las partes buscan obtener una opinión consultiva, o (5) se promueve un pleito que no está madura[35].

Existen varias excepciones a la doctrina de academicidad, a saber: (1) casos en los que aun cuando la decisión del tribunal no afecta a las partes involucradas presentan una cuestión recurrente; (2) casos en donde la situación de hechos ha sido modificada voluntariamente por el demandado pero sin visos de permanencia; (3) pleitos de clase en los cuales la controversia se torna académica para un miembro de la clase más no para el representante de la misma; y (4) casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales[36].

**-C-**

La *Ley para Estadounidenses con Discapacidades*, conocida en inglés como *American Disabilities Act*[37], fue promulgada por el Congreso de los Estados Unidos, entre otros fines, para brindar un mandato nacional –claro y completo– para la eliminación de la discriminación contra las personas con diversidad funcional[38]. Asimismo, mediante la citada ley, el Gobierno Federal pretende

---

[34] Cita omitida.
[35] Cita omitida.
[36] *Asoc. de Periodistas v. González*, 127 DPR 704, 719-720 (1991); *RBR Const., S.E. v. A.C.*, 149 DPR 836 (1999).
[37] 42 USC sec. 12188.
[38] 42 USC sec. 12101(b)(1), *Spector v. Norwegian Cruise Line Ltd.*, 545 US 119, 128 (2005).

proporcionar estándares claros, sólidos, consistentes y ejecutables que aborden la discriminación en contra de la referida población[39].

A tenor con la Ley ADA, el término *discapacidad* o diversidad funcional, con respecto a una persona, se refiere a:

> (a) un impedimento físico o mental que limita sustancialmente una o más actividades principales de la vida de tal persona;
> (b) un registro de dicho impedimento; o
> (c) de quien se considera o percibe que tiene tal impedimento[40].

Conforme a la finalidad de la Ley ADA, el Título III del mencionado estatuto establece una prohibición general de discrimen en contra de personas con diversidad funcional; ello, en el contexto del disfrute de lugares de acceso público. En particular, la sección 12182 de la Ley ADA dispone que ninguna persona será discriminada por motivos de diversidad funcional en el disfrute pleno e igualitario de los bienes, servicios, instalaciones, privilegios, ventajas o alojamiento de cualquier lugar de acomodo público por parte de alguna persona que posea, arrende u opere dicho lugar[41]. Para propósitos de lo anterior, las prácticas de discrimen, según la referida Ley, incluyen, entre otras, fallar en remover barreras arquitectónicas de naturaleza estructural, ubicadas en las facilidades existentes –sin incluir las barreras que solo pueden removerse mediante la readaptación de vehículos– donde tal remoción es fácilmente alcanzable[42]. Igualmente, constituirá una práctica de discrimen cuando la entidad en cuestión, después de demostrar que la remoción de las barreras arquitectónicas no es fácilmente alcanzable, aun así, falla en hacer que los bienes, servicios, facilidades, privilegios, ventajas o acomodos brindados a

---

[39] 42 USC sec. 12101(b)(2).
[40] 42 USC sec. 12102(1).
[41] 42 USC sec. 12182(a).
[42] 42 USC sec. 12182 (b)(2)(A)(iv).

personas con diversidad funcional estén fácilmente accesibles mediante métodos alternos[43].

En caso de infracciones a la precitada sección 12182 (b)(2)(A)(iv), se podrá solicitar un interdicto preliminar, el cual debe proveer una orden para que se modifiquen las instalaciones en aras de que sean accesibles para personas con diversidad funcional, en la medida requerida por el Título III de la Ley ADA[44]. Cuando corresponda, las medidas cautelares del interdicto deberán contener la exigencia de brindar una ayuda o servicio auxiliar, la modificación de una póliza o la provisión de métodos alternos, según exigido por el citado estatuto.

Ahora bien, para establecer un caso *prima facie* de discrimen al amparo del Título III de la Ley ADA, la parte demandante debe demostrar lo siguiente: (1) que es una persona cualificada con una discapacidad bajo la Ley ADA; (2) que la parte demandada opera un lugar de acomodo público, y (3) que la parte demandante fue discriminada por su discapacidad[45].

Al determinar si la persona reclamante tiene legitimación activa bajo la Ley ADA, es decir, el derecho a una causa de acción para solicitar un *injunction* de conformidad con lo anterior, un tribunal debe evaluar si dicha parte ha demostrado una amenaza real e inminente de que una barrera particular –ilegal– le puede causar un daño futuro[46]. El daño alegado debe ser real e inmediato, no abstracto o hipotético[47]. Por lo tanto, la persona que solicita un interdicto preliminar debe establecer una amenaza real e inmediata de que se producirá una conducta ilegal[48].

---

[43] 42 USC sec. 12182 (b)(2)(A)(v).
[44] 42 USC sec. 12188(a)(2).
[45] *Medina–Rodríguez v. Fernández Bakery, Inc.,* 255 F.Supp. 3d 334, 341 (DPR 2017).
[46] *Santiago Ortiz v. Caparra Ctr. Assocs., LLC,* 261 F. Supp. 3d 240, 248 (DPR 2016), citando a *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 305–06 (1er Cir. 2003).
[47] *Íd.*
[48] *Íd.*, citando a *O'Shea v. Littleton,* 414 US 488, 494 (1974).

**III.**

Considerando el marco jurídico antes delineado, pasamos a analizar el error formulado e imputado por el señor Bracero Quiñones, quien alega que erró el foro primario al no considerar ni aplicar correctamente la reglamentación federal que implementa la Ley ADA, referente a que un estacionamiento con 65 pulgadas de ancho es un estacionamiento que cumple con la sección 502.

Al verificar las alegaciones relacionadas con el tamaño de un estacionamiento, surge que, tanto en la *Petición de Interdicto Preliminar y Permanente*[49] como en la *Petición Enmendada de Interdicto Preliminar y Permanente*[50]*,* específicamente, se esbozan las siguientes dos (2):

> (e) La configuración y dimensiones del estacionamiento accesible ahora existentes (ilustrado abajo) es sustancialmente inconsistente con lo[s] requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. **Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura**. (énfasis suplido)
> (f) La configuración y dimensiones de los espacios adyacentes a los estacionamientos (access aisle) es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. ADAAG 2010 § 502.2, 502.3., 503.3.3. Aunque se objeta la configuración y ubicación del estacionamiento accesible arriba ilustrado, aun <u>suponiendo que esa configuración sea correcta, nótese como el estacionamiento no tiene su pasillo o espacio adyacente debidamente marcado;</u> en su lugar, en el espacio adyacente al estacionamiento lo que hay una motora, ya que el área no ha sido marcada de tal forma que se desalienta el estacionamiento de motoras u otros vehículos. **Posibles soluciones: reconfigurar y reposicionar el estacionamiento mediante la utilización de pintura.** (Énfasis suplido).

Colegimos que, estas alegaciones son genéricas y no atienden con particularidad los hechos aducidos en la reclamación civil.

Sin embargo, es en el recurso de apelación que, por primera vez, este alega y detalla cual es la métrica adecuada en los estacionamientos bajo el criterio de la Ley ADA, a saber: 96 pulgadas con un pasillo adyacente de 60 pulgadas o, en el caso de los vehículos tipo van, un espacio de 132 pulgadas con un pasillo de 60

---

[49] Entrada # 1 de SUMAC.
[50] Entrada # 58 de SUMAC.

pulgadas. Por lo cual, razona que incide el TPI al establecer que el ancho del estacionamiento es de 65 pulgadas de ancho, lo cual no está dentro del parámetro de la Ley ADA.

Es menester resaltar que, el foro primario realiza una inspección ocular y, posteriormente, el 16 de abril de 2024, notifica el *Acta de Inspección Ocular*[51], en la que concluye lo siguiente:

> En resumen, <u>este Juez entiende que lo único razonable es la cubierta para tapar tubería del lavamanos</u>, cambiar las barandas del baño, se estará verificando lo alegado sobre el estacionamiento, y si se requieren esas 18 pulgadas que se alega de espacio desde la pared.
> Sobre el estacionamiento verificara si procede porque como determinación de **hecho entiende que la distancia es razonable porque se estaciona, pueden abrir la puerta y bajar cómodo.**

A su vez, obra en el expediente el *Informe de Inspección Ocular*[52] (informe) y *Certificación de Cumplimiento*[53] de la Defensoría de las Personas con Impedimentos (DPI).

Tras revisar los documentos expedidos por la DPI, surge que el informe recomienda para el área de estacionamiento, que se cumpla con las especificaciones provistas en la Ley ADA. La certificación de cumplimiento de la DPI determina que:

> [...]
>
> (d) **El estacionamiento para impedidos tiene las medidas de ocho pies de ancho y cinco adicionales para el área de abordaje según requerido en el informe de ADA**[54].

Posteriormente, el TPI emite la Sentencia apelada. La determinación de hecho #5 dispone: *Los estacionamientos tienen una distancia de 65 pulgadas de ancho, debidamente rotulados;* y la #6: *Los espacios de estacionamiento para personas discapacitadas están en cumplimiento a la Ley ADA.*

En su *"Sentencia"*, el foro primario reconoce que *durante la inspección ocular se verificaron los dos estacionamientos para personas discapacitadas en el negocio. Constatamos que los mismos*

---

[51] Entrada #166 de SUMAC.
[52] Entrada #158 de SUMAC.
[53] *Íd.*
[54] *Íd.*

*se encuentran debidamente rotulados, encintados y conforme a las distancias mínimas requeridas.* **_Este Tribunal corroboró que las distancias entre cada estacionamiento en nada impiden o interviene con cualquier otro vehículo que ocupe el otro estacionamiento_**. *Además, observamos y constatamos que el área de pavimentos alegadamente deteriorada, no lo está. Por el contrario, el área pavimentada está en buenas condiciones que no impiden o afectan la movilidad de las personas discapacitadas.*

Las imputaciones que hace el apelante con relación a las deficiencias con el resultado de los cambios y las dimensiones de los estacionamientos, no nos convencen. Como vemos, la determinación del TPI no está desprovista de una base razonable. Al revisar el expediente electrónico a través de SUMAC, nos percatamos de la insuficiencia del expediente apelativo, basado en los documentos provistos por la parte apelante. De ese examen minucioso, se desprende que la parte apelada fue diligente en atender las deficiencias levantadas por el señor Bracero Quiñones, a la luz de la Ley ADA y, así lo certifica la DPI.

Cónsono con lo anterior, concurrimos con el foro primario en que aquí había un solo curso de acción: la desestimación de la Demanda, porque el caso se ha tornado académico[55], es decir, durante el trámite judicial, la parte apelada cumple cabalmente *con la eliminación de las barreras arquitectónicas en beneficio de personas discapacitadas y en cumplimiento a la Ley ADA*[56], provocando la ausencia de controversias reales y definidas, convirtiendo el caso en uno no justiciable.

Así pues, en ausencia de error manifiesto, prejuicio o parcialidad, los tribunales apelativos no debemos intervenir con las

---

[55] *Bhatia Gautier v. Gobernador*, 199 DPR 59, 73 (2017).
[56] Entrada #175 de SUMAC.

determinaciones de hechos de un tribunal sentenciador. Por consiguiente, procede confirmar la determinación del foro primario.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la Sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones